IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-6354 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Laura B. ("Claimant") brings a motion for summary judgment to reverse or remand the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIBs"), and Supplemental Security Income ("SSI"). The Commissioner brings a motion for summary judgment seeking to uphold the prior decision to deny benefits. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons stated below, Claimant's motion to reverse the Commissioner's final decision, (Dckt. #12), is granted, and the Commissioner's motion for summary judgment, (Dckt. #18), is denied.

**I.    BACKGROUND**

   **A.    Procedural History**

On July 13, 2018, Claimant filed applications for DIBs and SSI, alleging disability beginning on January 1, 2018. (Administrative Record ("R.") 208; Dckt. #12 at 2). Claimant's

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

applications were denied initially and upon reconsideration. (R. 13). Claimant filed a timely request for a hearing, which was held on November 8, 2019, before an Administrative Law Judge ("ALJ"). (R. 13, 33-67). On January 6, 2020, the ALJ issued a written decision denying Claimant's applications for benefits. (R. 13-25). Claimant filed a timely request for review with the Appeals Council. On August 26, 2020, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1). This action followed.

    B.    **The Standard for Proof of Disability Under the Social Security Act**

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind.

2

Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

C. **The Evidence Presented to the ALJ**

Claimant is a 56-year-old (at the onset of her alleged disability) former home health aide and real estate clerk who seeks disability benefits with an onset date of January 1, 2018, for limitations stemming from knee and hip osteoarthritis, lumbago with sciatica, carpal tunnel

syndrome, right hand tremors, diabetes, gastroenteritis, obesity, major depressive disorder, and anxiety disorder. (Dckt. #12 at 2, 7). Because the Court's decision relates only to the ALJ's assessment of Claimant's non-physical limitations, it will limit its discussion of the evidence accordingly.

        **1.**        **Evidence from Claimant's Treating Physicians**

                **a.**  **Dr. Hagan**

On November 28, 2017, Claimant presented to her primary care physician, Dr. Vanessa Hagan, who had been treating her since 2014. (R. 400). Dr. Hagan assessed hypothyroidism, acute sinusitis, hypertension, osteoarthritis of the hip and knee, carpal tunnel syndrome, migraines, and type-2 diabetes. (R. 401). As of November 28, 2017, Claimant was taking numerous daily medications. (*Id.*).

Dr. Hagan completed a physical RFC questionnaire[2] assessing claimant's functional capabilities on January 12, 2019, after treating Claimant monthly over a period of 5 years. (R. 1379-81). Dr. Hagan diagnosed Claimant with arthritis, asthma, tremors, and hypertension and she opined that Claimant's depression, anxiety, and other psychological factors further affected her condition. (R. 1379). Dr. Hagan listed Claimant's primary symptoms as dizziness, fatigue, and neck pain, and indicated that her symptoms would constantly interfere with her attention and

---

[2] Each of Claimant's treating physicians discussed in this section completed a form generated by Nash Disability Law ("NDL") which contained two disclaimers. At the top of the form's first page, the form states: "Please answer the following questions concerning your patient's impairments. This information will be used in addition to the relevant medical records and opinions from other health care providers to adjudicate your patient's Social Security Disability Claim." (*E.g.*, R. 1379, 1833, 1836). The form states:

> [NDL] created the enclosed medical or other source statement. NDL did not contract with, pay any money, or provide any other consideration to the author of the enclosed statement. NDL gave a copy of the enclosed form prior to its completion to the claimant and recommended the claimant take the form to his/her doctor or other treating source to be completed and signed.

(*E.g.*, R. 1381, 1835, 1838). The form itself is three pages and does not leave room for or suggest the need for expansive narrative or explanation for the certifications made within its four corners.

concentration to perform even simple work tasks. (*Id.*). She estimated that Claimant would miss at least four workdays per month given her impairments or treatment. (R. 1381).

### b. Dr. Sunbuli

Dr. Hagan referred Claimant to pulmonologist Dr. Moutaz Sunbuli for treatment of her asthma. (R. 1596). Dr. Sunbuli noted that Claimant presented complaining of dyspnea around perfumes and humidity on June 2, 2019. (R. 1596-98). On August 15, 2019, Dr. Sunbuli assessed Claimant suffered from asthma, chronic cough, obesity, major depressive disorder, anxiety, eczema, and multiple allergies. (R. 1594).

On September 4, 2019, after treating Claimant for four months, Dr. Sunbuli completed a pulmonary RFC questionnaire on Claimant's behalf. (R. 1833-35). Dr. Sunbuli diagnosed asthma, reactive airway disease, and obstructive sleep apnea resulting in shortness of breath, orthopnea, chest tightness, wheezing, rhonchi, coughing. (R. 1833). Dr. Sunbuli also stated Claimant suffered two to three moderate acute asthma attacks per year. (*Id.*). Dr. Sunbuli described Claimant's prognosis as "good." (R. 1834). Dr. Sunbuli further advised that Claimant should avoid concentrated exposure to extreme cold and heat, high humidity, and wetness and that Claimant should avoid all exposure to perfumes, soldering fluxes, solvents, cleaners, fumes, odors, gases, dust, chemicals, and other irritants. (R. 1835). Dr. Sunbuli estimated that Claimant's conditions would result in "good days" and "bad days" and that she would miss about two workdays per month due to her pulmonary impairments. (*Id.*).

### c. Dr. Gokhale

From at least February 20, 2017, and continuing through 2018, Claimant presented to psychiatrist Dr. Sudhir Gokhale for treatment related to her depression and anxiety on a bimonthly basis. (R. 1061-76, 1305-08, 1547-53). Dr. Gokhale diagnosed and treated Claimant

for major depressive affective disorder with various medications, including Xanax, Citalopram Hydrobromide, and Amitriptyline. (*See* R. 1547-48).

After treating Claimant for over a year, Dr. Gokhale completed a mental impairment RFC and listings questionnaire on Claimant's behalf on September 28, 2019. (R. 1836-38). Dr. Gokhale diagnosed Claimant with major depression and anxiety disorder resulting in symptoms of sleep disturbance, decreased energy, mood disturbance, panic attacks, and feelings of guilt or worthlessness. (R. 1836). Dr. Gokhale certified that Claimant's disorders existed for greater than two years with evidence of treatment or psychosocial supports or therapies, and that she exhibited minimal capacity to adapt to changes in her environment. (*Id.*). Dr. Gokhale stated that Claimant's mental impairments could be treated by medication and therapy and that he expected her treatment to last longer than one year. (R. 1837).

Dr. Gokhale estimated that Claimant's impairments would cause her to miss about three days of work per month. (*Id.*). Dr. Gokhale further opined that Claimant would be moderately limited in her mental ability to do the following unskilled work: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule and maintain regular attendance; (3) work in coordination with or proximity to others without distraction; (4) complete a normal workday or workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without significant rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) refrain from distracting coworkers; and (7) travel in unfamiliar places or use public transit. (*Id.*). In sum, Dr. Gokhale opined that Claimant's impairments would interfere with twenty-one percent or more of a typical workday and that she has moderate limitations in: (1) concentration, persistence, or maintaining pace, and (2) adapting or managing herself. (R. 1838).

6

## 2. Evidence from the State Agency Physicians

State agency physicians Phillip Galle, M.D. and James Hinchen, M.D. reviewed Claimant's file on October 4, 2018, and March 7, 2019, respectively. Following their review of the available medical evidence, each doctor found that none of Claimant's medically determinable impairments were severe. (R. 75, 85-86, 102-03). Both physicians further found that Claimant's conditions were controlled with medications, and they concluded that Claimant "does not have an impairment that causes more than a minimal limitation in the ability to function." (R. 85, 105). As the ALJ noted, however, these state agency physicians "did not have opportunity to examine the claimant or review the additional medical evidence received at the hearing level." (R. 22).

## 3. Evidence from Claimant's Testimony

Claimant appeared with counsel for her November 8, 2019, hearing before the ALJ. (R. 35). Claimant testified that she lived alone in a single-family home and cooks for herself but has issues with lifting and vacuuming. (R. 41, 47). Claimant visited friends and relatives occasionally but said she had been using taxis rather than public transit due to her conditions. (R. 48-49).

Claimant related that she recently completed a ten-month online medical billing and coding program through DeVry University. (R. 42). Claimant testified that the on-line availability of those courses allowed her to start and stop lectures when she was not feeling well and that she was unable to be present in a live classroom setting. (R. 43). Claimant also stated that her last job was a sedentary position as a receptionist for a real estate company in Chicago. (R. 44-45).

Claimant stated that she was diagnosed with anxiety and depression. (R. 53). Of the two, anxiety impacted her ability to work more because she suffered from panic attacks, whereas depression caused fatigue and an inability to concentrate. (*Id.*). These conditions manifested in an inability to focus on assignments and necessitated repetition of instructions or courses during her online studies. (R. 53-54). For example, Claimant testified she could not complete a two-and-a-half-hour lecture in one sitting because she could not focus for that long. (R. 54). Claimant believed that her anxiety, depression, and gastrointestinal issues would keep her from working as a real estate receptionist at her former employer. (R. 59-60).

### 4. Evidence from Vocational Expert

The Vocational Expert ("VE") testified that Claimant's past work as a home health aide for her mother was semi-skilled with a specific vocational preparation ("SVP") of three and a medium level of exertion as performed generally, but heavy as performed by Claimant. (R. 61). The VE then testified that Claimant's employment as a real estate clerk was skilled (SVP of five) and sedentary generally and as performed by Claimant. (*Id.*). The VE further testified that an individual of Claimant's past educational and vocational history, limited to a range of sedentary work, who could only occasionally use ramps or stairs, never use ladders, ropes, or scaffolds, frequently crouch, occasionally stoop; could no more than frequently be exposed to temperature extremes or wetness; and could no more than occasionally be exposed to humidity or pulmonary irritants could perform Claimant's past work as a real estate clerk. (R. 62). The VE stated that the Dictionary of Occupational Titles ("DOT") does not define ready access to a restroom, but that the Occupational Safety and Health Administration mandates ready access to a restroom in office buildings. (R. 62-63). However, the VE testified that employers would not tolerate an individual who required more than ten-minute breaks every thirty to forty-five minutes. (R. 63).

Likewise, the VE testified that, on average, employers would tolerate employees missing an upper threshold of one and a half days per month. (R. 65).

### D. The ALJ's decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of January 1, 2018. (R. 15). At step two, the ALJ determined that Claimant suffered from the severe impairments of "asthma, gastroenteritis, and spondylosis of the lumbar spine." (R. 15). The ALJ considered Claimant's degenerative changes in her knees and feet, mild carpal tunnel syndrome, hypertension, diabetes mellitus, cervical dystonia, obesity, general anxiety disorder, and major depressive disorder but found those impairments to be non-severe. (R. 16).

The ALJ considered the "paragraph B" criteria for mental functioning and found that Claimant had "mild limitations" in her ability to understand, remember, or apply information as well as to concentrate, persist, or maintain pace but with no limitations in her ability to interact with others or to adapt or manage herself. (R. 16-17). The ALJ further found that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas *and* the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." (R. 17) (emphasis in original) (internal citations omitted).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including section 3.03 ("asthma") and 1.04 ("disorders of the spine"). (R. 18).

Before turning to step four, the ALJ determined that Claimant had the RFC:

9

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).[3] The Claimant could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, frequently crouch, and occasionally stoop. The claimant could have no more than frequent exposure to temperature extremes or wetness. She could have no more than occasional exposure to humidity or pulmonary irritants. She requires ready access to a restroom.

(R. 18). The ALJ then determined at step four that Claimant was capable of performing her past relevant work as a real estate clerk. (R. 23). As such, the ALJ found Claimant was not disabled without proceeding to step five of the analysis. (R. 24).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul,* 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner.

---

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §404.1567(a). Moreover, sedentary work requires the ability to sit for six hours and to stand and/or walk for two hours during an eight-hour work day. *Collins v. Astrue*, 324 Fed.Appx. 516, 517 (7th Cir. 2009).

*McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

#### A. The ALJ Erred by Failing to Account for the Limitations Resulting from Claimant's Mental Impairments when Determining Claimant's RFC.

As outlined above, the ALJ concluded that Claimant's general anxiety disorder and major depressive disorder were non-severe impairments that nonetheless caused her to experience mild limitations in her ability to concentrate, persist, or maintain pace as well as understand, remember, or apply information. (R. 16-17). Although the ALJ acknowledged that his step two analysis was "not a residual functional capacity assessment" and that the "mental residual functional capacity assessment used at steps [four] and [five] . . . requires a more detailed assessment," (R. 17), the ALJ did not account for Claimant's mental impairments in the RFC itself. (R. 18). Claimant now urges this Court to reverse and remand the ALJ's decision to deny her award of benefits, arguing, among other things, that the ALJ failed to properly consider the limitations arising from her mental impairments in his RFC finding. Because this argument has merit, the Court finds that remand to the Social Security Administration is required, and it will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations

11

in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to re-assert them on remand.

"The RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). That "a non-severe impairment may not significantly limit a claimant's ability to work when viewed in isolation" does not mean that it cannot "'be critical to the outcome of a claim' when viewed in combination with other limitations." *Muzzarelli v. Astrue*, No. 10 C 7510, 2011 WL 5873793, at *23 (N.D.Ill. Nov. 18, 2011), *quoting* SSR 96-8p.

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into her RFC even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g., DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin*, 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin*, No. 12-C-169, 2013

WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand."). Moreover, "[i]f the ALJ intended to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, she was obligated to explain how she did so." *Viviana R. v. Kijakazi*, No. 19-cv-07419, 2022 WL 3354840, at *5 (N.D.Ill. Aug. 12, 2022), *quoting Muzzarelli*, 2011 WL 5873793, at *23; *Anthony W.*, 2022 WL 1062334, at *3 ("While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. . . . [T]he Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole.").

Conversely, if the ALJ did not believe Claimant's mental impairments warranted non-exertional limitations in the RFC, she was obligated to explain why. *Muzzarelli*, 2011 WL 5873793, at *23; *Joanne Y. v. Kijakazi*, No. 21-cv-1050, 2023 WL 3389367, at *6 (N.D.Ill. May 11, 2023); *Thomas G. v. Kijakazi*, No. 20-cv-5860, 2022 WL 4234967, at *5 (N.D.Ill. Sept. 14, 2022); *Viviana R.*, 2022 WL 3354840, at *5. An ALJ's failure to provide such an explanation leaves the Court unable to follow the ALJ's reasoning and, therefore, requires remand so that the ALJ can provide clarification. *Muzzarelli*, 2011 WL 5873793, at *23-24; *Viviana R.*, 2022 WL 3354840, at *5 (collecting cases).

Here, the Commissioner concedes that Claimant suffers from mild mental impairments. Nonetheless, the Commissioner argues that Claimant "did not cite evidence substantiating work-related mental limitations" and that the ALJ appropriately concluded that Claimant's mild "mental limitations did not necessitate work-related restrictions" because "no objective medical evidence substantiated her reports" of mental impairments. (Dckt. #19 at 14-15).

13

However, the ALJ's decision contains no such conclusion. In fact, despite his assurance at step two, the ALJ did *not* provide a "more detailed assessment of the mental RFC used at steps four and five." (R. 19-23). Indeed, the ALJ made no mention in his RFC assessment of his own finding that Claimant has mild limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace. Nor did the ALJ provide any explanation as to why he declined to include any non-exertional limitations in the RFC to address the mild mental limitations that he found that Claimant has.

The ALJ's failure to address the mild limitations created by Claimant's mental impairments is truly troubling because the determination of non-disability was based on the ALJ's finding that Claimant had the ability to perform her past skilled work as a real estate clerk. (R. 23-24). Courts have repeatedly recognized that even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C.*, 2019 WL 339514, at *3 (citing cases); *Teri D. v. Kijakazi*, No. 20 C 4999, 2023 WL 2789326, at *4 (N.D.Ill. Apr. 5, 2023); *Joanne Y.*, 2023 WL 3389367, at *5-6; *Hovi*, 2013 WL 3989232, at *16.

For these reasons, the ALJ's decision cannot be upheld. On remand, the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mental impairments' impact in the two broad areas of mental functioning or explain why such limitations are unwarranted.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment, (Dckt. #12), is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #18), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**Date: May 23, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**